CHAMBERLAIN *v.* HAANPAA.

1. NEGLIGENCE—LIVESTOCK HAULING—LOADING BULLS.

Claim of defendant livestock hauler that plaintiff, engaged in the same business, was a mere volunteer in the matter of loading a bull onto a truck on a ramp *held,* not sustained in record of plaintiff's action for injuries sustained alleged to have been due to defendant's negligence in failing to properly halter the bull, in having a knot in the rope too large to pass through slot in truck, and in failing to take proper precautions for a reasonably safe loading of large livestock, where assistance was rendered by each to the other in the loading of livestock as need arose and defendant had requested plaintiff to render assistance.

2. SAME—LIVESTOCK HAULING—INVITEES.

Defendant livestock hauler who expressly invited plaintiff to give a hand in loading large livestock owed the duty to be reasonably certain that he was not inviting plaintiff into danger and to exercise due care and prudence to make the undertaking reasonably safe for plaintiff and to prevent the existence of a situation which defendant knew or should have known might result in injury.

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Animals § 80 *et seq.*
[2] 4 Am Jur 2d, Animals § 103.
[3] 5 Am Jur 2d, Appeal and Error § 894.
[4] 38 Am Jur, Negligence § 344 *et seq.*
[5] 4 Am Jur 2d, Animals §§ 82, 89, 106, 108.

3. APPEAL AND ERROR—INSTRUCTIONS—LIVESTOCK HAULER.

Claim of error in instructions given to jury in action by one
livestock hauler against another for injuries sustained while
plaintiff was assisting in loading a bull onto a truck for
defendant at latter's request *held*, not erroneous, where instruc-
tions given fairly and fully presented the law applicable to the
issues.

4. NEGLIGENCE—EVIDENCE.

The question of negligence is considered one of law for the court
only where the facts are such that all reasonable men must
draw from them the same conclusions.

5. SAME—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE—LIVE-
STOCK HAULERS.

Evidence presented in action by one livestock hauler against an-
other for injuries plaintiff sustained while helping to load a
bull on a truck *held*, to present for jury the question of negli-
gence of defendant and contributory negligence of plaintiff.

Appeal from Ontonagon; Wright (Robert R.), J.
Submitted Division 3 May 12, 1965, at Detroit.
(Docket No. 252.)  Decided July 19, 1965.

Declaration by Tollcott L. Chamberlain against
Wesley Haanpaa, Oiva Niemi, and Waino Juntunen
for injuries sustained when a bull, being loaded into
a truck, struck plaintiff.  From verdict and judgment
for plaintiff against defendant Haanpaa only, he
appeals.  Affirmed.

*Walsh & Munro* (*Donald L. Munro*, of counsel), for
plaintiff.

*Humphrey & Weis* (*Charles M. Humphrey, Jr.*, of
counsel), for defendant Haanpaa.

WATTS, J.  This is a civil action brought by plain-
tiff Tollcott L. Chamberlain against Wesley Haan-
paa, Oiva Niemi, and Waino Juntunen for personal
injuries sustained while loading a large bull into

a truck.  Verdict and judgment for plaintiff against defendant Haanpaa; defendant Haanpaa appeals.

Plaintiff and defendant Haanpaa were experienced livestock haulers who had worked together on several occasions assisting one another in the loading of livestock.  While plaintiff was waiting for the loading facilities at Bruces Crossing stockyard, defendant Haanpaa requested plaintiff to give a hand in the loading of two bulls.  The first bull had been delivered by plaintiff to the stockyard, blindfolded, haltered, and roped.  The second bull had been delivered by defendant Haanpaa to the stockyard, not blindfolded, haltered, or roped.  The animal had a 16' 10" chain around his neck to which defendant Haanpaa had tied a 40' rope.  Plaintiff led the second bull to the loading facilities after defendant Haanpaa had advised him that the bull was ready for loading.[1]

On the day of the acident, the usual procedure for loading large animals was not followed by defendant Haanpaa in the loading of the second bull.  He had tied a rope to a chain which had been placed around the bull's neck.  Plaintiff took hold of the free end of the rope and led the animal up the ramp and put the free end of the rope through the slot in the truck.  Defendant Haanpaa was unable to restrain the bull from attacking plaintiff because the knot in the rope was too large to pass through the slot in the truck; plaintiff was injured in the attack.

Plaintiff testified, "Well, there was times that I came to the yard and I needed help, and if I help

---

[1] The usual procedure at Bruces Crossing stockyard for hauling large animals was to place a rope halter on the head of the animal. One person would take the free end of the rope and lead the animal up the loading ramp or chute into the truck and put the loose end of the rope through a slot in the truck.  The second man standing outside the truck would receive the free end of the rope after it had passed through the slot and tie the animal to the side of the truck. (About 10 per cent of the large animals loaded at Bruces Crossing stockyard are blindfolded for loading.)

Haanpaa, I figure that eventually he would help me; and that was a natural agreement, so if I asked him to help me, we naturally had to have help because there was no hired help at the yard whatever." Plaintiff further testified that he discovered the second bull was neither haltered nor blindfolded when the knot tied by defendant Haanpaa failed to pass through the slot. He further testified that the day of the accident was the first time he had seen a large animal loaded with a rope tied to a chain.

Plaintiff claims that defendant Haanpaa breached his duty to plaintiff in failing to properly halter the bull and in failing to form a knot which would pass through the slot in the truck, and that the failure of defendant to take the proper precautions for a reasonably safe loading of large livestock was the proximate cause of plaintiff's injuries.

Defendant Haanpaa denies negligence and contends that plaintiff was negligent and that plaintiff volunteered his services, and therefore he owed no duty other than not to injure plaintiff by wilful and wanton acts.

Defendant Haanpaa's contention that plaintiff was a mere volunteer is not substantiated by the record. The evidence is undisputed that defendant Haanpaa requested plaintiff to give a hand in loading livestock and, further, that plaintiff had an interest[2] in the work of assisting defendant Haanpaa in the loading of livestock.

Several of the cases upon which defendant Haanpaa relies are distinguishable on the facts and do not involve an express invitation to give assistance coupled with an interest in the work. *Waltanen* v.

---

[2] Plaintiff by helping defendant to load his truck would reduce the waiting time for the use of the facilities. The stockyard is a small operation with one paid employee. There would be many times that plaintiff would need assistance from defendant in loading his truck. Plaintiff said that if he assisted defendant, defendant would assist him when he needed help.

*Wiitala* (1960), 361 Mich 504; *Cheney* v. *Olender*
(1942), 303 Mich 129; *Powell* v. *Twin Drilling Co.*
(1942), 300 Mich 566; *Diefenback* v. *Great Atlantic
& Pacific Tea Co.* (1937), 280 Mich 507; and *Wojew-
oda* v. *Rybarczyk* (1929), 246 Mich 641.

Justice SOURIS, writing the majority opinion in
*Felgner* v. *Anderson* (1965), 375 Mich 23, 56 said:

"The cases    *    *    *    including *Waltanen* v.
*Wiitala*, 361 Mich 504, and all other cases decided
by this Court in which the doctrine of assumption of
risk or its language has been used improperly as
determined in the foregoing opinion, hereby are over-
ruled.

"The trial judge's refusal to charge the jury on
assumption of risk as defendant requested him to do
was not error."

The opinion of the Court in *Pace* v. *Gibson* (1959),
357 Mich 315, 324 stated:

"In the instant case the testimony of the plaintiff
fairly discloses that he and his employer were in-
terested in the unloading of the merchandise. Said
employer was engaged as a common carrier in the
transportation and delivery of freight by motor
truck. It was to its interest that the equipment op-
erated by plaintiff should be unloaded to the end
that it would be available for other transportation,
and that the merchandise be delivered to the con-
signee. Plaintiff was also interested in turning the
merchandise over to the consignee in lieu of hauling
it back to the terminal and taking action to have it
delivered by another facility. We have, in conse-
quence, a situation in which plaintiff and his em-
ployer as well as the defendants were interested in
the unloading of the boxes or crates. In view of
the testimony to the effect that defendants author-
ized and induced plaintiff to assist in the unloading
operation, we are not here concerned with the ques-

tion * * * as to the authority of an agent or employee enlisting the aid of another.

"Under the circumstances here presented it cannot be said as a matter of law that plaintiff was a mere volunteer. He did not, in consequence, assume the risk of being injured by ordinary negligence on the part of defendant or his employee, and may not be charged with contributory negligence on such basis. In viewing the situation, we have in mind the general rule that the testimony must be construed as strongly as reasonably possible in favor of the plaintiff.

"Neither may it be said as a matter of law, on the basis of his conduct as shown by his testimony, that plaintiff failed to establish his freedom from contributory negligence. Under the circumstances defendant owed him the duty of exercising ordinary care for his safety. He had a right to rely on the instructions that defendant had given as to the method that should be followed in unloading the crates, and to assume that defendant and his employee would be governed accordingly. He was not required to anticipate that either, or both, would suddenly release his hold on the crate or box without a proper warning to him, thereby permitting the crate to slide against him with the resulting injury. *Hunter* v. *Baldwin,* 268 Mich 106; *Kavigian* v. *Lonero,* 312 Mass 603 (45 NE2d 823). See, also, *Klein* v. *Detroit Metallic Casket Company,* 336 Mich 157."

In *Johnson* v. *E. C. Clark Motor Co.* (1912), 173 Mich 277, 289 (44 LRA NS 830), Justice STONE quoting from *Kelly* v. *Tyra,* 103 Minn 176 (114 NW 750, 115 NW 636, 17 LRA [NS] 334), in which Jaggard, J., says:

" 'There is, however, an increasing class of cases in which the exercise of proportionate care is held to be due to servants of different masters, who assist in the performance of a service mutually beneficial to such employers. Thus a servant of a shipper, who, to prevent delay, aids the servants of a carrier in

shunting cars, is not a mere volunteer assisting defendant's servants, although on request, but is regarded as having been on defendant's premises with a purpose of expediting the delivery of his own goods. The carrier is liable to him for the negligence of its servants. [Citing cases.] * * * So one with an interest, who is requested by another's servant to assist in adjusting or fixing an instrumentality, is not a mere volunteer, but is within the rule requiring the exercise of due care. [Citing cases.]

" ' "The distinction running through all the cases is this: That where a mere volunteer—that is, one who has no interest in the work—undertakes to assist the servants of another, he does so at his own risk. In such a case the maxim of *respondeat superior* does not apply. But where one has an interest in the work, either as consignee or the servant of a consignee, or in any other capacity, and at the request or with the consent of another's servants undertakes to assist them, he does not do so at his own risk, and, if injured by their carelessness, their master is responsible. In such a case the maxim of *respondeat superior* does apply. The hinge on which the cases turn is the presence or absence of self-interest. In the one case, the person injured is a mere intruder or officious intermeddler; in the other, he is a person in the regular pursuit of his own business and entitled to the same protection as any one whose business relations with the master expose him to injury from the carelessness of the master's servants." '

"Applying this rule to the facts in this case as claimed by the plaintiff, we must hold that the plaintiff was not a mere volunteer.

"2. Was the plaintiff, as matter of law, guilty of contributory negligence? We think not. We are of opinion that it was a question for the jury. Upon this record it appears that the plaintiff had no reason to anticipate that Crankshaw would start the motor when he did. Plaintiff was proceeding in a

perfectly safe manner but for the active and un-expected conduct of Crankshaw."

Applying the rule as cited in *Kelly* v. *Tyra*, 103 Minn 176 (114 NW 750, 115 NW 636, 17 LRA [NS] 334) to the facts in the instant case, this Court must hold that plaintiff is not a mere volunteer. There is sufficient and competent testimony to give defendant Haanpaa the legal status of an invitor and plaintiff the status of an invitee. The invitor, defendant Haanpaa, who expressly invited plaintiff to give a hand in loading large livestock, owes the duty to be reasonably certain that he is not inviting a person into danger and to that end shall exercise ordinary care and prudence to make the undertaking reason-ably safe for the person giving assistance and to exercise due care to prevent the existence of a sit-uation which defendant Haanpaa knew or should have known might result in injury. *Kroll* v. *Katz* (1965), 374 Mich 364; *Torma* v. *Montgomery Ward & Co.* (1953), 336 Mich 468, 476. In *Blakeley* v. *White Star Line* (1908), 154 Mich 635, 637 (19 LRA NS 772, 129 Am St Rep 496), the Supreme Court quoted with approval the following from Cooley on Torts (1st ed) p 605:

"One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication in-vites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reason-ably safe for the visit."

Defendant Haanpaa claims the court erred in his instructions to the jury. However, the court's in-structions to the jury when considered with the

testimony fairly and fully presented the law applicable to the issues and were sufficient.

Defendant Haanpaa further claims that the trial court erred in refusing to grant his motion for directed verdict both as to his negligence and the negligence of plaintiff.

Did the record raise a question of fact as to whether or not defendant Haanpaa exercised proper care and precautions to enable the plaintiff to give assistance in the loading of livestock with reasonable assurance of safety?

The question of negligence is considered one of law for the court only where the facts are such that all reasonable men must draw from them the same conclusions. *Baldinger* v. *Ann Arbor R. Co.* (1964), 372 Mich 685; *Sparks* v. *Luplow* (1963), 372 Mich 198; *Barnebee* v. *Spence Bros.* (1962), 367 Mich 46. It cannot be said from the record before this Court that all reasonable men would draw the same inferences from the facts in the instant case. Neither may it be said that plaintiff was guilty of negligence as a matter of law.

Defendant Haanpaa and plaintiff were experienced haulers of livestock and worked together on numerous occasions. Plaintiff had no reason to anticipate that defendant Haanpaa would use a rope tied to a chain with a knot too large to pass through the slot in the truck in place of the customary rope halter. A reasonable person could have considered plaintiff free from negligence. The question became one of fact for determination by the jury. *Ingram* v. *Henry* (1964), 373 Mich 453.

Judgment affirmed; costs to plaintiff.

J. H. GILLIS, P. J., and McGREGOR, J., concurred.