PRESTON *v.* SLEZIAK.

OPINION OF THE COURT.

1. NEGLIGENCE — INVITEE — SOCIAL GUEST — PUBLIC PURPOSE — BUSINESS VISITORS.

"Invitee" has a special meaning in law, which excludes social guests but includes public invitees, persons invited to enter or remain on land as members of the public for a purpose for which the land is held open to the public, and business visitors, persons invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

2. NEGLIGENCE—SOCIAL GUEST—LICENSEE—INVITEE.

A social guest is not an invitee, but a licensee.

3. NEGLIGENCE — POSSESSOR OF LAND — LICENSEE — LIABILITY — KNOWLEDGE — REASONABLE CARE.

A possessor of land is liable for physical harm caused to a licensee by a condition of the property only if the possessor knew or had reason to know of the condition, realized that an unreasonable risk of harm to the licensee was involved, expected that the licensee would not discover the danger, and failed to exercise reasonable care to make the conditions safe or to warn the licensee of the condition and risk involved, and the licensee did not know or have reason to know of the condition and risk involved.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 38 Am Jur, Negligence § 96 *et seq.*
[2] 38 Am Jur, Negligence § 117.
[3] 38 Am Jur, Negligence § 104.
[4] 26 Am Jur 2d, Elevators and Escalators § 1.
[5] 50 Am Jur, Statutes § 358.
[6] 41 Am Jur, Pleading § 288 *et seq.*
[8] 38 Am Jur, Negligence § 12 *et seq.*
[9] 38 Am Jur, Negligence § 29 *et seq.*
[10] 38 Am Jur, Negligence § 344 *et seq.*
[11] 38 Am Jur, Negligence § 362 *et seq.*

4. STATUTES—ELEVATORS—DEFINITION—APPEAL AND ERROR.

The elevator code, defining "elevator" as equipment used in raising or lowering a car within five degrees vertically, was properly excluded from evidence and a jury instruction that its violation was negligence *per se* was properly refused by the trial court where the exteriorly located 45-degree lift, the failure of which gave rise to the suit, was not within the statutory definition (PA 1955, No 153).

5. STATUTES—CONSTRUCTION.

Statutes are construed so as to give meaning to all parts of the statute.

6. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — PLEADING — AMENDMENT — APPEAL AND ERROR.

Allowing amendment of defendant's pleading to raise the defense of plaintiff's contributory negligence in overloading a lift was not an abuse of discretion where the amendment was permitted in conjunction with amendment of plaintiff's pleading alleging affirmative negligence by defendant in overloading the lift, thereby introducing both plaintiff's and defendant's views as to the overloading of the lift.

DISSENTING OPINION.

T. G. KAVANAGH, J.

7. NEGLIGENCE—INVITEE—LABELS.

*Whether a person may properly be labelled an "invitee" or not should not determine whether he should recover for injuries suffered as the result of someone's negligence.*

8. NEGLIGENCE—ACTION—ISSUES.

*The proper inquiry in every negligence action determines three things: (1) Was the defendant negligent? (2) Did that negligence proximately cause the plaintiff's injury? (3) What was plaintiff's damage?*

9. NEGLIGENCE—STANDARD OF CARE—REASONABLY PRUDENT MAN.

*The standard for judging conduct in a negligence action is always "What would a reasonably prudent man have done under the same or similar circumstances?" and the test applied to defendant's conduct is "Did defendant measure up to this standard?"*

10. NEGLIGENCE—REASONABLY PRUDENT MAN—BUSINESS INVITEE—
SOCIAL GUEST.

*The circumstance that a person was invited onto the premises of another for the economic benefit of the one or the other, or that he came as a social guest, is one of the considerations a jury may take into account when determining what a reasonably prudent man would have done, but the jury should be free to determine the issue of negligence in every case.*

11. NEGLIGENCE—INSTRUCTIONS TO JURY—LABELLING.

*Instructions to jury in a negligence action couched in the traditional language labelling plaintiff as a gratuitous invitee diverted the attention of the jury from its special task of determining whether the defendant under all the circumstances accorded the plaintiff the treatment and consideration he owed as a reasonably prudent man.*

Appeal from Court of Appeals, Division 3, R. B. Burns, P. J., and J. H. Gillis and Corkin, JJ., reversing and remanding Kent, Stuart Hoffius, J. Submitted January 13, 1970. (Calendar No. 3, Docket Nos. 52,398, 52,399.) Decided April 13, 1970.

16 Mich App 18, reversed.

Separate complaints by Eleanor Preston and Anthony Preston against Raymond Sleziak and Delores Sleziak for negligence. Verdict and judgment for defendants. Plaintiffs appealed to Court of Appeals. Reversed and remanded for a new trial. Defendants appeal. Reversed, and judgment of the trial court affirmed.

*Russell & Ward,* for plaintiffs.

*Cholette, Perkins & Buchanan (Don B. Souter* and *Edward D. Wells,* of counsel), for defendants.

T. M. KAVANAGH, J. Plaintiffs, both adults, were spending the weekend as social guests at defendants'

hilltop cottage overlooking the state park at Grand Haven, Michigan. Access to the cottage was by either a 113-step stairway or a lift consisting of a car which was raised or lowered along railed tracks by means of cables and electric winch. The lift was of the homemade variety, but the defendant husband repeatedly assured plaintiffs that it was safe. The parties entered the lift, and as the car was descending a shaft broke causing the car to crash to the bottom, injuring plaintiffs.

Plaintiffs filed an action alleging defendants were negligent in constructing, maintaining and operating the lift. The jury returned a verdict of no cause of action. Upon appeal, the Court of Appeals held that the trial judge did not properly instruct the jury as to the duty of a host to his guests, and reversed and remanded the cause for a new trial. 16 Mich App 18.

Defendants, here on leave granted (382 Mich 755), state as the sole question on appeal:

Is the duty owing by a host to an adult social guest the same as that owing to a business invitee?

The trial judge charged the jury in part as follows:

"Now, in this particular case there is an unusual relationship between the plaintiffs and the defendants. It is clear that the plaintiffs were the guests of the defendants in the defendants' home. This brings us to what is their status and how can we consider this.

"It has sometimes been said that a guest in a home such as this is a gratuitous invitee and that the host's only duty is not to injure by active or affirmative negligence a guest whose presence is known, not to set a trap or pitfall for the guest, to warn against or remove any defects which the host knows are likely to cause harm to the guest and which he has reasonable grounds to believe the

guest is not likely to discover for himself, and generally not to cause injury by gross negligence, recklessness or wanton and willful misconduct.

"I should, therefore, inform you at this very point that there is no evidence in my opinion of any gross negligence, recklessness or wanton and willful misconduct, so that if you find liability you will have to find it on one of the other grounds, and I will discuss that more carefully with you.

"I should further inform you that a gratuitous invitee, which is the status of Mr. and Mrs. Preston, who goes upon his host's land, the host has the duty to advise—excuse me; strike that—that the host must exercise reasonable care to disclose to the guest the dangerous defects which were known to him and were likely to be undiscovered by the guest.

"I should further inform you that with regard to this status that 'a social guest injured by a defect in the premises cannot recover against his host in the absence of evidence establishing something more than ordinary negligence in the maintenance of the premises.'

" 'More specifically, it has been held that a guest can recover only where his injury is the result of active and affirmative negligence of the host while the guest was known to be on the premises, or of the failure of the host to remove or warn against defects amounting to a trap or pitfall known by the host to present a danger to the guest, and which he also knows the guest will not, in the exercise of reasonable care, discover and avoid for himself.'

" 'There is no duty on the part of the host to reconstruct or improve the premises for the purpose of making his house more convenient or more safe for those accepting his hospitality, gratuitously extended. The guest assumes the ordinary risks which attach to the premises.'

"Now, the reason for this rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of

his family who reside with him have in that particular home."

The Court of Appeals acknowledged that the rule in a majority of jurisdictions is as stated by the trial judge. See 25 ALR2d 598. The Court, however, relying upon the case of *Genesee Merchants Bank & Trust Company* v. *Payne* (1967), 6 Mich App 204, at p 208, as a specific rejection of the general rule indicated that the Michigan cases have uniformly cited with approval Cooley on Torts (1st ed), p 605:

" 'One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business *or for any other purpose,* it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit.' (Emphasis supplied.) See *Blakely* v. *White Star Line* (1908), 154 Mich 635, 637; *Torma* v. *Montgomery Ward & Company* (1953), 336 Mich 468, 476, 477; *Kroll* v. *Katz* (1965), 374 Mich 364, 371; *Chamberlain* v. *Haanpaa* (1965), 1 Mich App 303, 310; and *Genesee Merchants Bank & Trust Company* v. *Payne* (1967), 6 Mich App 204, 208, 209. See also *Lauchert* v. *American S. S. Co.* (WD NY, 1946), 65 F Supp 703, 709.' " (16 Mich App 20, 21)

It, therefore, reversed and remanded for a new trial on the grounds that Michigan law classifies the social guest as an invitee. Such construction erroneously departs from the well-established rule of law in this state respecting social guests.

It is true that Cooley's oft-quoted statement on torts accurately expressed the law in this state.

But a careful reading of Cooley's work[1] indisputably discloses that the enunciated rule applies solely to invitees. Every authority cited and illustration given concern a business invitee or general public invitee. To seize upon the words "or for any other purpose" as justification for equating an invited social guest and a legally defined "invitee" is unwarranted. It should be noted that Justice COOLEY, expressing this rule in *Samuelson* v. *Cleveland Iron Mining Company* (1882), 49 Mich 164, at p 170, himself deleted this overly broad phraseology. Furthermore, to attribute a legally synonymous meaning to social guest and invitee discordantly blurs the distinction so carefully preserved by the author at pp 193, 194:

"An invitation may be inferred when there is a common interest or mutual advantage, a license when the object is the mere pleasure or benefit of the person using it. 'To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business with which the occupant of the premises is engaged, or which he permits to be carried on there. There must be some mutuality of interest in the subject to which the visitor's business relates, although the particular business which is the object of the visit may not be for the benefit of the occupant.'

" 'The distinction between a visitor who is a mere licensee and one who is on the premises by invitation turns largely on the nature of the business that brings him there, rather than on the words or acts of the owner which precede his coming. Permission involves leave and license, but it gives no right.' " 3 Cooley on Torts (4th ed), § 440.

---

[1] See Cooley on Torts (1st ed), Nuisances, pp 605–607; Cooley on Torts (1st ed), Implied License—Express License, pp 303–316; 3 Cooley on Torts (4th ed), § 440, pp 186–200.

Consonant with the above distinction and more in keeping with the factual circumstances surrounding the case of a social guest is the statement found at p 198:

" 'The owner or occupant of premises is not under any legal duty to keep them free or safe from the danger of obstructions, pitfalls, excavations, trapdoors or openings in floors for persons who go upon, into, or through the premises, *not by his invitation, express or implied, but for their own pleasure or convenience, though by his acquiescence or permission, and who, therefore, are mere licensees. Such a visitor enjoys the license subject to the attendant risk.*' " (Emphasis supplied.)

The cases cited by the Court of Appeals, *of course* support the rule given by Cooley. With the exception of one case discussed more fully, *infra,* each decision cited was based upon the fact that the possessor of the land was the operator of a business and the injured party was present as a business invitee.[2] They do not, however, support the rule pertaining to social guests, discussed *infra,* and are wholly inapposite.

The single case cited by the Court of Appeals touching upon the issue before us—although admittedly *dicta*[3]—is *Genesee Merchants Bank & Trust Company* v. *Payne, supra,* (hereafter referred to as *Payne*).

In *Payne* the Court of Appeals properly assayed the historical "distinction between an invitee and

---

[2] *Blakely* v. *White Star Line* (1908), 154 Mich 635 (amusement park and pleasure resort); *Torma* v. *Montgomery Ward & Company* (1953), 336 Mich 468 (customer in department store); *Kroll* v. *Katz* (1965), 374 Mich 364 (plumbing contractor invited on premises to repair).

[3] The rule expressed in that case upon this issue never had the force of *stare decisis* in that the Court of Appeals expressly eliminated the rule from its ultimate decision (see 6 Mich App 204, 209).

a licensee, and the duties owed to each" [as turning] "on whether the invitor had expectation of gaining pecuniary benefit from the invitation". (p 208.) The Court likewise correctly implied that in this state the status of an invitee is tested not only by the theory of economic benefit, but also upon the concept of invitation. See *Hargreaves* v. *Deacon* (1872), 25 Mich 1, 5; *Nezworski* v. *Mazanec* (1942), 301 Mich 43, 59, 60; see, also, 2 Harper & James, Torts, § 27.12, pp 1478–1488.

But the Court of Appeals in *Payne* committed the identical error as did the Court of Appeals in the instant case when it failed to distinguish between one who is invited and one who is *de jure* an invitee, and then attempted to support its extrapolated position by citing as authority cases dealing with business invitees.

The Restatement of Torts (2d), § 332, p 176, defines "invitee" as follows:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land."

The comment under Reporter's Notes following § 332 reads in part:

"a. *Invitee.* 'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees. A social guest may be cordially

invited, and strongly urged to come, but he is not an invitee."

This definition fairly represents the law of this state pertaining to what constitutes the legal status of an invitee. *Samuelson* v. *Cleveland Iron Mining Company, supra; Blakely* v. *White Star Line* (1908), 154 Mich 635; *Torma* v. *Montgomery Ward & Company* (1953), 336 Mich 468; *Kroll* v. *Katz* (1965), 374 Mich 364.

As one commentator pointed out, however, the social guest holds the paradoxical position of being "an invitee who is not an invitee". 2 Harper & James, Torts, § 27.11, p 1477; see, also, Prosser, Business Visitors and Invitees, 26 Minn L Rev 573, 578, 603–605 (1942). The usual basis upon which the distinction between the social guest *vis-a-vis* the invitee is drawn is well stated in 2 Restatement of Torts (2d), § 330, comment h. * * * 3., p 175:

"Social guests. Some confusion has resulted from the fact that, although a social guest normally is invited, and even urged to come, he is not an 'invitee,' within the legal meaning of that term, as stated in § 332. He does not come as a member of the public upon premises held open to the public for that purpose, and he does not enter for a purpose directly or indirectly connected with business dealings with the possessor. The use of the premises is extended to him merely as a personal favor to him. The explanation usually given by the courts for the classification of social guests as licensees is that there is a common understanding that the guest is expected to take the premises as the possessor himself uses them, and does not expect and is not entitled to expect that they will be prepared for his reception, or that precautions will be taken for his safety, in any manner in which the possessor does not prepare or take precautions for his own safety, or that of the members of his family. This has not

gone without criticism, and an undercurrent of dissent, based upon the contention that it is not in accord with modern social custom and understanding when a guest is invited; but the decisions thus far have been all but unanimous to the effect that the social guest is no more than a licensee."

The controlling Michigan case in this area of adult social guests is *Miller* v. *Miller* (1964), 373 Mich 519. In *Miller* the plaintiff had gone to her son's home for a social visit and as she attempted to leave discovered the screen porch door was stuck. Upon the advice of her son to "give it a kick, it sticks sometimes", plaintiff kicked the door, which opened suddenly, hurling plaintiff down the porch steps.

Although two opinions were filed in *Miller,* the Court unanimously considered the social guest as a licensee.

Justice KELLY, dissenting on the point that summary judgment was properly granted, would have imposed upon the possessor of land that duty to his social guest expressed in 25 ALR2d 598, at p 600:

"[T]he results of the cases display a commendable unanimity in holding that a social guest injured by a defect in the premises may not recover against his host in the absence of evidence establishing something more than ordinary negligence in the maintenance of the premises. More specifically, it has been held that a guest can recover only where his injury is the result of active and affirmative negligence of the host while the guest was known to be on the premises, or of the failure of the host to remove or warn against defects amounting to a trap or pitfall known by the host to present a danger to the guest, and which he also knows the guest will not, in the exercise of reasonable care, discover and avoid for himself."

Justice SOURIS, writing for the majority, reversed the trial court's entry of summary judgment on the ground that (p 524):

"Here, a jury properly could find that plaintiff was, at the very least, a *gratuitous invitee*[4] upon defendants' land and, if it did so find, *the trial court would advise it that defendants' duty to plaintiff required they exercise reasonable care to disclose to her dangerous defects which were known to them and were likely to be undiscovered by plaintiff.* 2 Restatement of Torts, § 342." (Emphasis supplied.)

Thus we conclude under either opinion filed in *Miller, supra,* that in this jurisdiction the adult social guest is to be viewed as a licensee.

The duty which occupiers of land owe their licensees is best expressed by 2 Restatement of Torts (2d), § 342, p 210:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved."

Although not as precisely framed as the above quoted rule, the trial court's charge to the jury fairly instructed them of the duty which a host owes to

---

[4] Admittedly the term "gratuitous invitee," as used by Justice SOURIS, is a misnomer. Reference to 2 Restatement of Torts (2d), § 342, p 210, cited by Justice SOURIS as authority, discloses the proper title to be "Special Liability of Possessors of Land to Gratuitous Licensees."

his social guest. The Court of Appeals committed reversible error in granting plaintiffs a new trial.

Many of the issues raised by plaintiffs before the Court of Appeals, and specifically reasserted for review before this Court, are grounded upon the erroneous premise that a social guest is in law an invitee; and to the extent that they rest upon this premise, they do not require further discussion. Plaintiffs, however, do present two issues which warrant consideration:

(1) whether the trial court erroneously refused to admit into evidence the state elevator code[5] and instruct the jury that violation of the code constituted negligence *per se;* and

(2) whether the trial court abused its discretion by permitting defendants to amend their pleadings as to the issue of contributory negligence.

The pertinent statute, as it existed at the time of the accident,[6] defines the term "elevator" in § 1:

" 'Elevator' shall mean all the machinery, construction, apparatus and equipment used in raising and lowering a car, cage or platform within 5 degrees vertically between permanent rails or guides, and shall include all elevators, power dumb waiters, manlifts, escalators, gravity elevators and other lifting or lowering apparatus permanently installed between rails or guides, but shall not include hand operated dumb waiters, construction hoists or other similar temporary lifting or lowering apparatus, or underground mine lifting apparatus. The term 'elevator' shall not include any permanently installed, hand operated, counterweighted car or platform having not more than 4 square feet of floor

---

[5] PA 1937, No 82 (CL 1948, § 408.351 *et seq.* [Stat Ann 1960 Rev § 17.471 *et seq.*]).

[6] PA 1955, No 153, amending CL 1948, § 408.351 (Stat Ann 1960 Rev § 17.471). For current provisions of this statute see PA 1967, No 227 (CL 1948, § 408.801 *et seq.* [Stat Ann 1968 Rev § 17.495 (1) *et seq.*]).

area and used only for and capable of carrying only 1 person for a vertical distance of not more than 15 feet: Provided, That such apparatus shall be located only in the capitol building."

We agree with the trial judge that the exteriorly-located 45-degree lift in question was not within the statutory definition of equipment used in raising or lowering a car "within 5 degrees vertically." To read the statutory language specifying the equipment included within the basic definition in a conjunctive sense, as urged upon us by plaintiffs, would render the definitive portion of the statute meaningless. Where possible, we construe statutes so as to give meaning to all parts. *Sanchick* v. *State Board of Optometry* (1955), 342 Mich 555; *Smith* v. *Wayne County Sheriff* (1937), 278 Mich 91.

We find the statute not applicable to the facts of the instant case.

On the second issue, *i.e.,* abuse of discretion, we note that the amendment of defendants' pleadings to include contributory negligence—alleging plaintiffs were negligent in assisting to overload the lift—was permitted because of and only in conjunction with the amendment to plaintiffs' pleadings alleging affirmative negligence in overloading the lift. We find no abuse of discretion in permitting both views relating to the overloading of the lift to be introduced in the case by amendment. GCR 1963, 118.1; *Scott* v. *Cleveland* (1960), 360 Mich 322.

For the above reasons, we reverse the Court of Appeals and affirm the judgment of the trial court.

Defendants-appellants shall have costs.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, and ADAMS, JJ., concurred with T. M. KAVANAGH, J.

T. G. Kavanagh, J. (*for affirmance*). However handy labels may be for identification purposes, we must avoid the temptation to substitute labels for reason.

Whether an individual may properly be labelled an "invitee" or not should not determine whether he should recover for injuries suffered as the result of someone's negligence.

In every suit for damages for injuries suffered as a result of asserted negligence, the proper inquiry determines three things: (1) Was the defendant negligent? (2) Did that negligence proximately cause the plaintiff's injury? (3) What was plaintiff's damage?

The standard for judging conduct is *always* "What would a reasonably prudent man have done under the same or similar circumstances?" The test for determining negligence is "Did defendant measure up to this standard?"

If a person "invites" another onto his premises for the economic benefit of one or the other the person invited is said to be a business invitee. This circumstance is *one* of the considerations a jury may take into account when determining what a reasonably prudent man would have done.

Likewise the circumstance that a person comes on another's premises as a social guest—the invitee who is not an invitee—should also be taken into consideration by the jury in determining what a reasonably prudent man would have done.

Unless we are to make negligence a matter of law by saying the equivalent of "No social invitee has a right to expect the host to make the premises reasonably safe for the purpose of the visit" or "A host is never under obligation to make the premises reasonably safe for the purpose of the visit unless there is some monetary benefit to be derived from

the visit," the jury should be free to determine the issue of negligence in every case.

In the case before us, the trial court's instruction, couched in the traditional verbiage of obfuscatory labelling, in my view diverted the attention of the jury from their special task of determining whether the defendant under all the circumstances accorded the plaintiff the treatment and consideration he owed as a reasonably prudent man.

The rule applied by the Court of Appeals is the better rule, and if it has not always been the rule it now is because it should be.

I would affirm with costs to appellee.