*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RAYMOND WEITZMAN,

       Plaintiff-Appellant,

v

WYNDHAM POINTE SUBDIVISION
HOMEOWNERS ASSOCIATION and CHARTER
TOWNSHIP OF WEST BLOOMFIELD,

       Defendants-Appellees.

UNPUBLISHED
August 22, 2024

No. 364491
Oakland Circuit Court
LC No. 2021-190477-NO

Before: BOONSTRA, P.J., and CAVANAGH and PATEL, JJ.

BOONSTRA, P.J. (*concurring in part and dissenting in part*).

I agree with the majority that we should not (and cannot under *Kandil-Elsayed v F & E Oil, Inc*, 512 Mich 95; 1 NW3d 44 (2023) ) abandon Michigan's categorical approach to the duties owed by a landowner. I also agree with the majority that remand is required with respect to defendant Charter Township of West Bloomfield (although I would not reach certain factual issues that the trial court has not yet addressed). I disagree, however, with the majority's holding regarding defendant Wyndham Pointe Subdivision Homeowners Association, and instead would affirm the trial court's grant of summary disposition to that defendant. I therefore fully concur with Parts I-III of the majority opinion, dissent from Part IV, and concur in the result reached in Part V, as more fully explained below.

## I. WYNDHAM POINTE

Regarding Wyndham Pointe, and as the majority recognizes, *Kandil-Elsayed* arose in the context of a claim brought by an invitee. So too did the decision in *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), which *Kandil-Elsayed* overturned. This context makes all the difference in the world, particularly since the Supreme Court in *Kandil-Elsayed* expressly held that "the three traditional status-based categories—licensee, invitee, and trespasser—remain." *Kandil-Elsayed*, 512 Mich at 143.

"In the context of premises liability, 'a landowner's duty to a visitor depends on that visitor's status.' " *Id*. at 111, quoting *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591,

597; 614 NW2d 88 (2000). The duty owed to a licensee is therefore different from that owed to an invitee. "[A]n invitee is entitled to the highest level of protection under premises liability law." *Stitt*, 462 Mich at 597. "The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id*.

By contrast, the duty owed to a licensee is much more limited. As our Supreme Court held in *Stitt*, 462 Mich at 591:

> A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe for the licensee's visit.

The Supreme Court has further explained that a licensor is liable to a licensee if, but only if:

> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved. [*Blackwell v Franchi*, 502 Mich 918, 918; 914 NW2d 900 (2018).]

In this case, it is undisputed that plaintiff was a licensee, and therefore that Wyndham Pointe was charged only with the limited duty to warn of hidden dangers of which it knew or had reason to know, but of which plaintiff did not know or have reason to know. After evaluating the evidence, the trial court found:

> Photographic evidence presented establishes that the sidewalk had a readily visible and apparent defective condition. In fact, plaintiff testified that the condition of the sidewalk was not hidden, and he saw it after his fall. . . . Plaintiff testified that the defect was not hidden, that the direction in which he approached the uneven sidewalk was not the reason for not seeing the defect, and that there was nothing that prevented him from seeing the defect, the weather was clear and there were no visibility issues. Plaintiff admitted that he was not watching where he was stepping and simply did not see the defect but did not know why.

The evidentiary record supports the trial court's findings. Plaintiff expressly testified, for example, that the defect "wasn't hidden," that it "wasn't covered with leaves or anything like that," and that there was no debris or any trash, sticks, branches, or tree limbs on the sidewalk. He further testified that there was nothing preventing him from seeing the height discrepancy between the two sidewalk slabs.

The majority nonetheless posits that "[a] hazard can be hidden when it is 'nonvisible', " and that the height discrepancy in this case may have been "nonvisible from the direction [plaintiff] approached it." The majority relies on *Blackwell v Franchi*, 327 Mich App 354, 357; 933 NW2d 762 (2019) (*On Remand*) (*Blackwell II*), in which this Court, on remand, characterized the "condition alleged by [the] plaintiff" as "a nonvisible eight-inch floor level drop-off." In stretching this comparison, however, the majority improperly ignores plaintiff's own testimony in this case conceding that the discrepancy "wasn't hidden." That concession is fatal to plaintiff's assertion that Wyndham Pointe owed him, as a licensee, a duty to warn him of the condition on the land that allegedly injured him, and entitles Wyndham Pointe to summary disposition.

Further, the undisputed evidentiary record establishes that Wyndham Pointe did not know or have reason to know of the defect. It had never received any complaints about the condition of the sidewalks within the subdivision, or any reports of defects, was not aware of anyone else falling on a sidewalk, had not previously repaired a sidewalk, and despite regularly inspecting the subdivision (which it had no duty to do with respect to licensees) had never discovered the height discrepancy. And Wyndham Pointe's board members testified that they frequently ran and walked in the area of plaintiff's fall and never noticed the height discrepancy. For this additional reason, therefore, the evidentiary record establishes as a matter of law that Wyndham Pointe had no duty to warn plaintiff of the height discrepancy, and it is entitled to summary disposition.

## II. WEST BLOOMFIELD CHARTER TOWNSHIP

Regarding the township, I agree with the majority's conclusion that remand for further proceedings is required. As the majority notes, the salient question is whether the township had possession or control of the sidewalk, such that it would have a statutory duty to maintain it in reasonable repair. MCL 691.1402a(1). Because the trial court did not address that question (or such related questions as whether plaintiff had rebutted the presumption that the township had kept the sidewalk in reasonable repair, or whether plaintiff had established a genuine issue of material fact regarding whether the condition had existed for such a period of time that defendant could be presumed to have had knowledge of the defect), I agree that remand is required to address these issues. See *People v Woolfolk*, 304 Mich App 450, 475; 848 NW2d 169 (2014) (noting that this Court is an error-correcting court). But unlike the majority, I would not resolve the issue of whether plaintiff demonstrated a genuine issue of material fact regarding either the height of the discontinuity or its existence for more than 30 days—in the absence of a trial court ruling on the issue, and in light of the fact-intensive nature of those determinations, I believe the better course of action would be to simply remand for further proceedings on the issue of the township's liability under MCL 691.1402a(1) and allow the trial court to consider the entire matter afresh in light of our ruling.

/s/ Mark T. Boonstra

-3-